IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHERRY BROADHEAD, | |
| Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| FEDERAL EXPRESS CORP. and/or FEDERAL EXPRESS CORP. LONG TERM DISABILITY PLAN and/or KEMPER INSURANCE CO. n.k.a. BROADSPIRE | Case No. 2:05-CV-806 TS |
| Defendants. | |

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment.[1] This action stems from an administrative denial by Defendant Federal Express Corporation ("Federal Express") of Plaintiff Sherry Broadhead's ("Broadhead") eligibility for benefits under a long-term disability ("LTD") plan governed by ERISA.[1] Federal Express argues its administrative denial was not arbitrary and capricious and was supported by substantial evidence in the administrative record.  The Court finds that the

_____

[1] Docket No. 16.

[1] Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

denial, even reduced in deference for an inherent conflict of interest, was not arbitrary and capricious.  Accordingly, the Court grants Federal Express's Motion for Summary Judgment.

## II.  FINDINGS OF FACT

The following facts are undisputed.  While working as a full-time dispatcher for Federal Express, Sherry Broadhead began to experience "unusual facial twitching," headaches, and anxiety and depression in mid-2001.  Due to these physical and mental ailments, Broadhead was unable to continue at her job.  As a covered employee under Federal Express's disability benefits plan, Broadhead received short-term disability benefits from July 16, 2001 to January 13, 2002.  But because the short-term disability benefits were limited to six months, any further disability benefits fell under the LTD plan.

Federal Express's LTD plan is governed by ERISA.  As the administrator of the plan, Federal Express delegated payment of claims for the LTD plan to Kemper National Services, Inc. ("Kemper") (now d.b.a. Broadspire Services, Inc. ("Broadspire")).  But Federal Express retained the remainder of its authority by sub-delegating to its Benefit Review Committee ("BRC") the power to make the final interpretation of the plan's provisions and terms and the final determination of a claimant's eligibility under the plan.[2]  Following the six months of short-term disability benefits, the BRC granted Broadhead LTD benefits under "Occupational Disability."  Limited to two years, these occupational disability benefits ended on January 13, 2004.  For Broadhead to receive

---

[2] LTD Plan § 5.3(d), Exhibit 4, R. at 343.

any further LTD benefits, the BRC had to make an eligibility determination of "Total Disability".

In contrast to "Occupational Disability," the LTD plan defines "Total Disability" as:

> "the complete inability of a Covered Employee, because of a medically-determinable physical impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training, or experience."[3]

A "Total Disability," must be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms."[4]  These "significant objective findings" include "Medical examination findings; Test results; X-ray results; observation of anatomical physiological or psychological abnormalities."[5]

Meanwhile, Broadhead sought medical attention for her headaches, facial twitching, and depression.  In September 2001, Dr. Philip Savia referred Broadhead for further diagnosis and treatment based on his concern of a possible seizure disorder.[6] Broadhead consulted with several physicians; their findings and opinions are summarized as follows.

---

[3] *Id.* at 305.
[4] *Id.* at 296.
[5] Def.'s Mem. Supp. 4.
[6] R. at 52.

Broadhead's Treating Physicians

**Dr. Glenn E. Johnson**: In January 2002, Dr. Glenn E. Johnson, a psychiatrist, indicated on a Kemper Behavioral Health Clinician Statement that Broadhead's cognitive functioning suffered from "markedly impaired short term memories." He also diagnosed Broadhead with a major depressive disorder, a grand mal seizure disorder, an organic affective disorder, and a frontal lobe meningioma (tumor).[7]

**Dr. Robert M. Miska**: In an April 29, 2002 letter to Cathy Baxter, NP, Dr. Robert M. Miska wrote that Broadhead's "[f]acial twitching" . . . is unconvincing for focal seizures" and "doubt[ed] the presence of any bona fide seizure disorder." Dr. Miska also noted that Broadhead is on "partial temporary medical disability, probably for psychological reasons more than medical" and that Broadhead "clearly had a significant element of depression as well as probably anxiety." Although Broadhead was diagnosed with a "[m]edically-minor small left sub-frontal meningioma, [it was] only dubiously related to any of her other symptoms." Broadhead's EEG was normal and Dr. Miska disagreed with another EEG's interpretation of a seizure disorder and epilepsy. Lastly, Dr. Miska found "no medical reason [that Broadhead] would not be allowed to operate a motor vehicle.[8]

**Dr. Antonietta A. Russo**: In March 2003, Dr. Antoinetta A. Russo, a licensed psychologist, completed a Neuropsycholoigcal Evaluation Report. Broadhead's test result found her effort and motivation to be in the "high-average range of functioning," her attention and concentration "more variable and dependent on the tasks," and her judgment "to be fairly intact based on her ability to discuss everyday activities and situations" and able "to follow through on tasks."[9] Depending on the specific test, results ranged from average to "below-average range and significantly below expectation" and to "borderline to deficient rage".[10]

Based on these tests, Dr. Russo concluded that "I do not believe that Ms. Broadhead is suffering from significant consequences relating not just to the presence of meningioma but also to its affects on her life."[11] Broadhead suffers from "high degrees of anxiety and mild to moderate degrees of depression. A certain amount of her anxiety appears to be

---

[7] *Id.* at 54–55.
[8] *Id.* at 100–02.
[9] *Id.* at 107–08.
[10] *Id.* at 108–11.
[11] *Id.* at 112.

4

significantly related to the effect of the tumor itself, as well as feelings of insecurity about her current status and its affect on her inability to work."[12]

Dr. Russo recommended that "a return to work plan be orchestrated with her company." "I have suggested that [Broadhead] return to work first of all on a part-time basis and slowly increase to full-time employment. Although patient cannot return to her prior position as a dispatcher, "[i]t is strongly recommended that she be given a lower level of cognitive work to begin with as she slowly builds up stamina . . . ."[13]

In a follow up visit on August 18, 2003, Dr. Russo found Broadhead's anxiety to be very high with Broadhead working on it.[14]

On August 25, 2003, Dr. Russo prepared a Disability Determination Services Report on Functioning which concluded from the most recent exam of 8/25/03 that Broadhead's "depressive and anxiety symptoms appear to be quite extreme." Dr. Russo continued to recommend a slow return to work from part-time status into full-time status.[15]

**Dr. Gregory Dupont**: On April 8th, 2003, Dr. Gregory Dupont completed a Nocturnal Oximetry and Heart Rate/Sleep Apnea Screening Report. The report found that "patient's symptoms are suggestive of a nocturnal arousal disorder (e.g. sleep apnea or periodic limb movements)."[16]

**Dr. Shockey**: On May 22, 2003, a consultation with Dr. Shockey, a pulmonologist, diagnosed Broadhead with "drowsiness [and] somnolence," with various potential causes. Broadhead was advised to quit smoking, "be extremely cautions while driving," and receive other tests, including a thyroid test which later showed her result to be within normal range.[17] An imaging report that same day indicated that Broadhead's "lungs are clear. The heart size and mediastinum are normal. Osseous structures are unremarkable."[18]

On August 4, 2003, Dr. Shockey found that Broadhead's cough and wheezing decreased and recommended that Broadhead quit smoking,

---

[12] *Id.* at 112.
[13] *Id.* at 113.
[14] *Id.* at 98.
[15] *Id.* at 21–26.
[16] *Id.* at 114–17.
[17] *Id.* at 188, 121.
[18] *Id.* at 123.

exercise, get seven to eight hours of sleep, and take vitamins for her drowsiness and somnolence.[19]

**Dr. Kurrus**: On June 16, 2003, Dr. Kurrus found that the results of Broadhead's polysomnography showed that Broadhead did not have Sleep Apnea Syndrome and "was not hypoxic."[20]

**Dr. Lisa Schweitzer**: On July 14, 2003, Lisa Schweitzer, a speech language pathologist, evaluated Broadhead. Dr. Schweitzer found "intact abilities" but Broadhead was unable to focus after 45 minutes of testing. Dr. Schweitzer recommended speech therapy once or twice a week for four to six weeks.[21]

Peer Review Physicians

Towards the end of Broadhead's consultation with her own treating physicians, Federal Express retained "peer review physicians" for their opinion based on their review of Broadhead's medical records. None of the peer review physicians conducted an in-person examination of Broadhead. The initial peer reviews are as follows.

**Dr. Aron Neuhaus**: On December 1, 2003, Dr. Aron Neuhaus, a pulmonologist reviewed Broadhead's medical records and found no sleep apnea, no significant oxygen desaturation, a normal chest x-ray, and no pathological sleep pattern. Dr. Neuhaus concluded that although "excessive sleepiness may prevent her from performing an attention-demanding occupation or driving commercial vehicles or operating heavy commercial machinery . . . she certainly should be able to perform in a sedentary less demanding limited 25 hours a week occupation. All the objective testing and reports seem to support this opinion."[22]

**Dr. Vaughn Cohan**: On December 1, 2003, Dr. Vaughn Cohan, a neurologist, reviewed the reports from Dr. Miska concluded that Broadhead is "within normal limits including confrontation examination of mental status, cognitive function, and speech" as well as an EEG "within normal limits." Dr. Cohan also reviewed Dr. Russo's notes, from

---

[19] *Id.* at 132–33.
[20] *Id.* at 127.
[21] *Id.* at 129–30.
[22] *Id.* at 161.

which he found that "[t]he location and size of the meningioma are not compatible with a diagnosis of organic brain dysfunction or of cognitive dysfunction or impaired speech . . . [and] the abnormalities which were described on the formal testing appeared to be more typical of impaired performance due to underlying anxiety and depression." Dr. Cohan concluded Broadhead was able to work for a minimum of 25 hours per week.[23]

After receiving the evaluations from the treating and peer review physicians, Federal Express notified Broadhead in a December 8, 2003 letter that its investigation determined that she was ineligible for Total Disability benefits under the LTD plan because there was no "objective evidence of an organic functional impairment which would preclude you from engaging in any compensable employment."[24] However, Broadhead requested an administrative appeal to review the existing information and any additional information she and Federal Express chose to submit.

The Administrative Appeal by the BRC

Federal Express's BRC handled the internal appeal. In response to the denial, Dr. Russo mailed a letter on January 7, 2004. The letter asserted that Broadhead had faced two main issues. First, Broadhead experienced insurance issues that prevented her from entering cognitive rehabilitation for an extensive time and limited the number of sessions she received. Second, "the most significant barrier to [Broadhead's] return to work is severe depression and anxiety.[25] Dr. Russo included a copy of the Disability Determination Services Report on Functioning from August 2003, which she had

---

[23]
 *Id.* at 162–64.
[24] *Id.* at 10–12.
[25] *Id.* at 40–41.

previously faxed on January 4, 2004.  Dr. Russo's recommendation of a gradual return to work remained unchanged.

Subsequently, Defendant sought additional peer reviews from its own physicians, whose finding, interpretations, and opinions were again based on Broadhead's medical records and the notes of her treating physicians.  The remaining peer reviews are summarized as follows.

> **Dr. Dennis Mazal**: On March 3, 2004, Dr. Dennis Mazal, a pulmonologist found that "[a]lthough the Epworth sleepiness scale is abnormal, the objective polysomnography, oximetry recordings, and multiple sleep latency testing does not support a diagnosis of obstructive sleep apnea.  Dr. Mazal concluded that Broadhead would not be precluded from working for a minimum of 25 hours per week.[26]

> **Dr. Elana Mendelssohn**: On March 8, 2004 Dr. Elana Mendelssohn, a clinical and neuropsychologist reviewed Dr. Russo's neuropsychological evaluation and found that the "[a]lthough Dr. Russo attributed the claimant's cognitive status to the presence of a brain tumor, the claimant's pattern of performance was also suggestive of psychological overlay."  Dr. Mendelssohn also found that "the objective data does not support that the claimant has complete limitation in her functional ability based on her neuropsychological status" and "no recent objective data document[s] further decompensation in the claimant's cognitive status."  Dr. Mendelssohn concluded that Broadhead was not precluded from working for "a minimum of 25 hours per week from 1/04/04 to current."[27]

> Dr. Mendelssohn included an addendum to her review on March 12, 2004 after she examined Dr. Russo's Disability Determination Services Report on Functioning.  Dr. Mendelssohn concluded that Dr. Russo focuses on "claimant's anxiety and billing/insurance difficulties" and failed to submit any objective data to the contrary.  Dr. Mendelssohn's conclusion as to work remained the same.[28]

> **Dr. Gerald Goldberg**: On March 9, 2004, Dr. Gerald Goldberg, a neurologist, review Broadhead's medical records and found "no

---

[26] *Id.* at 165–69.
[27] *Id.* at 170–72.
[28] *Id.* at 174.

neurologic deficits described on her neurologic exams, there is no documentation that she in fact has any type of seizure disorder, and there is no evidence that she has pathologic sleepiness during the day."  After reviewing Dr. Russo's notes, Dr. Goldberg concluded that "[b]ased on the existing information from a neurological standpoint, there continues to be no objective data that would support a functional impairment that would preclude the claimant from working 25 hours per week."[29]

Based on the examinations, findings, and conclusions of the treating and peer review physicians, Federal Express's BRC made its final determination on March 31, 2004.[30]  Broadhead received notice of and reasons for her ineligibility by letter.[31]

The BRC letter of April 6, 2004, informed Broadhead that she was ineligible to receive any long term disability benefits because she failed to "meet the definition of total disability" under the LTD Plan due to a lack of significant objective findings and her ability to work the minimum hours required under the LTD plan.[32]  Based on the objective findings and opinions of the peer review physicians and some of the treating physicians, the BRC specifically concluded that: (1) Broadhead's impaired cognitive function, which included organic brain dysfunction and impaired speech was not due to meningioma, but was more typical of anxiety and depression; (2) the meningioma, about 10 millimeters in size when initially diagnosed, had not significantly changed in two years and was not related to any functional impairment or producing any particular symptoms; (3) Broadhead's drowsiness and headaches were not caused by an obstructive sleep apnea or a pathological sleep pattern; and (4) Broadhead's cognitive and function ailments did not preclude her from working a minimum of 25 hours per week.  In short,

---

[29] *Id.* at 178.
[30] *Id.* at 1.
[31] *See id.* at 2–5.
[32] *Id.* at 2.

Broadhead's ailments were caused by psychological problems of depression and anxiety or, if a physiological cause existed, there was a lack of significant objective findings.[33]

Following the BRC's denial, Broadhead filed this civil suit under ERISA § 502(a) to recover the long term benefits of the LTD plan.  Since filing, Plaintiff has stipulated to dismiss Broadspire Services, Inc. with prejudice.[34]   Federal Express now moves for summary judgment.

### III.  DISCUSSION

Federal Express seeks summary judgment because it asserts the administrative record establishes that it reasonably denied Broadhead's eligibility for long-term disability benefits.  Broadhead opposes on the grounds that the BRC acted unreasonably in denying her eligibility.

**A.      The Arbitrary and Capricious Standard of Review for Summary Judgment**

Both parties agree that there are no issues of fact.  Moreover, Federal Express asserts, and Broadhead essentially concedes, that the arbitrary and capricious standard of review is proper and should be limited to the administrative record.[35]   But in regards to the degree of deference under the standard of review, Broadhead makes two cursory arguments of conflict of interest and weight to treating physicians.

This Court will grant a motion for summary judgment if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[36]   Although de novo review is typical for summary judgment, the standard varies

---

[33] *See id.* at 2–5.
[34] Def.'s Mem. Supp. 2.
[35] Pl.'s Mem. Opp'n 9–11.
[36] Fed. R. Civ. P. 56(c).

where an ERISA plan is involved.  If "an ERISA plan grants a plan administrator or a delegate discretion in interpreting the terms of, and determining the grant of benefits under, the plan, [the court is] required to uphold the decision unless arbitrary and capricious."[37]  Under the arbitrary and capricious standard, the administrator's decision is upheld "so long as it is predicated on a reasoned basis," even if the basis is not the "superlative one."[38]  Existence of substantial evidence in the administrative record aids the court in its review.[39]  "Substantial evidence means more than a scintilla, of course, yet less than a preponderance" and is the sort of evidence that a "reasonable mind could accept as sufficient to support a conclusion".[40]

However, a reduction in deference is appropriate when a plan administrator operates under an inherent conflict of interest.[41]  An inherent conflict of interest exists where the insurer is also the plan administrator and thus conflicted by "its discretion in paying claims and its need to stay financially sound."[42]  Under this lesser deference, the plan administrator has the burden to prove "the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard."[43]  The court will take "a hard look at the evidence and arguments presented to the plan administrator to ensure . . . a

---

[37] *Adamson v. Unum Life Ins. Co. of America*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113–15 (1989)).
[38] *Id.* (citation omitted).
[39] *Id.*
[40] *Id.*
[41] *Fought v. Unum Life Ins. Co. of America*, 379 F.3d 997, 1006 (10th Cir. 2004).
[42] *Id.* (internal quotation marks and citation omitted).
[43] *Id.*

reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest."[44]

Here, the motion for summary judgment is proper.  Broadhead does not dispute any material fact.[45]  Federal Express meets its burden in support of its motion to show that its denial was predicated on a reasonable basis as discussed below.

The arbitrary and capricious standard of review is also proper, but a reduction in deference is warranted.  Although Broadhead fails to specify any potential conflict of interest, the Court finds that an inherent conflict of interest exists that warrants a reduction in deference because Federal Express and its BRC had a vested interest in the payment of long term disability benefits to Broadhead.

**B.  Substantial Evidence**

In opposition to summary judgment, Broadhead asserts that the BRC's denial was unreasonable because: (1) the BRC failed to give substantial weight to the treating physicians and their ability to consider the "whole picture"; (2) Broadhead's treating physicians supported eligibility for her subjective complaints and cumulative ailments; and (3) the BRC did not consider an employability assessment or the Social Security benefits status.

1.  Deference

Broadhead contends that the BRC was unreasonable because it failed to give greater weight to the opinions of Broadhead's treating physicians, but instead hired its

---

[44] *Id.*
[45] *See* Def.'s Mem. Supp. 2–3; Pl.'s Mem. Opp'n 3–17.

own physicians who were limited to a peer review.  This argument is unsupported by case law.

In <u>Black & Decker Disability Plan v. Nord</u>, the Supreme Court ruled that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."[46]  The ruling overturned the Ninth Circuit's "treating physician rule" which required an administrator who rejected a treating physician's opinion to give "specific reasons for his decision, based on substantial evidence in the record."[47]

The Ninth Circuit applied its treating physician rule after Black & Decker referred Nord, who had submitted a claim for disability benefits under the ERISA-governed plan, to a neurologist for an independent examination.  Based on the neurologist's finding that Nord was able to perform sedentary work, Black & Decker denied the claim.  The Ninth Circuit's rationale for the treating physician rule was to "increase the accuracy of disability determinations under ERISA plans" and deter the possibility that the repeatedly retained physicians were "finding . . . 'not disabled' in order to save their employer money and to preserve their own consulting arrangements."[48]

---

[46] 538 U.S. 822, 834 (2003).
[47] *Id.* at 828.
[48] *Id.* at 832.

But in <u>Nord</u>, the Court questioned the Ninth Circuit's rationale because it assumed that the treating physician's relationship with the patient was of a long duration and that the retained physician had a biased incentive or was not a specialist who could provide an expertise which the treating physician lacked.[49]  Moreover, the Court also emphasized the special nature of ERISA-governed plans which grant employers a "large leeway" in determining plans and flexibility in administering those plans.[50]

Moreover, although an administrator cannot arbitrarily refuse to credit the opinion of treating physicians, it is not required "to accord special deference to those opinions" or "to credit their opinions over other evidence that was relevant to [a claimant's] medical condition," including a peer review physician.[51]

Broadhead argues that the BRC erroneously failed to give substantial weight to the treating physicians.  None of the peer review physicians performed an in-person examination.  Broadhead contends that the in-person examination provides a more comprehensive and informed opinion, especially where one of the physicians is a psychiatrist.  What Broadhead asks comes close to the treating physician rule overruled by <u>Nord</u>.  But factual distinctions exist.

Unlike the peer review physician who performed an actual examination in <u>Nord</u>, none of the peer review physicians have examined Broadhead.  Rather, their opinions are solely based on the medical records obtained from Broadhead's treating physicians.  But disregarding this factual distinction and the assumptions that may make an in-person

---

[49] *Id.*
[50] *Id.* at 833.
[51] *Atkins v. SBC Commc'ns., Inc.,* 200 Fed. Appx. 766, 773  (10th Cir. 2006) (unpublished opinion).

examination better, requiring the BRC to give substantial weight to the treating physicians impedes the flexible administration of Federal Express's ERISA-governed LTD plan.

Additionally, Federal Express questions Broadhead's argument that Dr. Johnson, a psychiatrist, is better suited to give a "total package" of Broadhead's symptoms and problems.  To avoid this trap of trying to determine who is better suited, the Court only needs to find that the opinions of the treating physicians and/or the peer review physicians provided a reasonable basis.  Thus the Court does not need to determine whether a psychiatrist, M.D., specialist, treating physician, or peer review physician is better suited, especially where doing so would conflict with Supreme Court precedent.

Lastly, considering only Broadhead's treating physicians, there is likely substantial evidence in the administrative record to support the BRC's determination that Broadhead does not meet Total Disability under the LTD Plan, because she is able to work 25 hours per week.

## 2.  Lack of significant objective findings and capability of working 25 hours per week

Under the terms of the Plan, for a claimant to receive Total Disability benefits, the disability must be "substantiated by significant objective findings."[52]  Significant objective findings are "defined as signs which are noted on a test or medical exam and are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms."[53]  These significant

---

[52] LTD Plan § 1.1(k), Exhibit 4, R. at 296.
[53] *Id.*

objective findings include medical examination findings, test results, x-ray results, or observation of anatomical or physiological abnormalities.

However, for a "Total Disability," psychological abnormalities are excluded by the terms of the Plan.  "Total Disability" is defined as the "complete inability" for an employee "to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training or experience."[54]  But this "complete inability" must be a "medically-determinable physical impairment," excluding those impairments "caused by a mental or nervous condition . . . ."[55]

Following the terms of the Plan, the BRC concluded that no significant objective findings existed.  In contrast, Broadhead contends that "overwhelming" objective evidence existed.  But Broadhead fails to identify any specific finding other than "medical evidence."[56]  Instead the bulk of Broadhead's argument cites a line of cases dealing with the diagnosis of chronic pain and fibromyalgia, in an attempt to suggest that Broadhead's ailments are not subject to the Plan's "significant objective finding" provision because her symptoms do not lend themselves to objective findings.  Federal Express obviously objects to Broadhead's attempt to "rewrite" the terms of the Plan.

Examining the record, two of Broadhead's treating physicians, Dr. Johnson and Dr. Russo, report a cognitive impairment and a possible correlation to the meningioma. However, the peer review physicians and even a treating physician, Dr. Miska, doubt the

---

[54] *Id.* at 305.
[55] *Id.*
[56] Pl.'s Mem. Opp'n 21.

correlation and attribute the cognitive impairment to Broadhead's depression and anxiety. Dr. Miska also found that the meningioma was "only dubiously related to any of her other symptoms."[57]   Moreover, even Dr. Russo recognizes Broadhead's "severe depression and anxiety" as "the most significant barrier to her return to work."[58]   Lastly, despite the existence of the 10 millimeter tumor, recent scans at the time of the determination found that no change occurred and Dr. Miska found Broadhead's EEG to be normal.[59]

Testing of Broadhead's functional ability, headaches, and drowsiness revealed no significant objective findings and ruled out sleep disorders such as an obstructive sleep apnea or a pathological sleep pattern.   The tests were conducted by Broadhead's physicians and peer reviewed.

Lastly and most importantly to the BRC's determination of ineligibility of Total Disability benefits is Broadhead's ability to work.   None of the treating or peer review physicians, with one exception, concluded that Broadhead is unable to work.   Each of the peer review physicians found that Broadhead is not precluded from working 25 hours per week.   Even Dr. Russo recommended that Broadhead return to work, albeit by a phased manner beginning with part-time and moving into full-time.   The only other condition on work comes from a peer review physician who cautions against "an attention-demanding occupation or driving commercial vehicles or operating heavy

---

[57] R. at 100–02.
[58] *Id.* at 40–41.
[59] *Id.* at 100.

commercial machinery . . . ."  But each physician concluded that Broadhead may perform a sedentary job.

The only exception as to Broadhead's ability to work is Dr. Johnson, who stated "I have been firmly convinced that Ms. Broadhead's cognitive impairment is real, significant, impairing, and limiting her ability to function in any type of employment."[60] But this finding from Dr. Johnson's June 28, 2004 letter came too late to the BRC who made its decision on March 31, 2004.

Federal Express argues that due to its late date, the letter should not be considered as part of the administrative record and thus out of the scope of the court's review.  In support, Federal Express cites Tenth Circuit case law, which noted that "ERISA's fiduciary provisions do not require a plan administrator to consider evidence submitted after a final benefits decision is made."[61]  Moreover, the terms of the plans do not require the BRC to consider belated evidence after its final determination.  But even considering Dr. Johnson's letter, it would not be unreasonable for Federal Express to conclude that based on the remaining opinions from the treating and peer review physicians, Broadhead was able to work 25 hours per week in a sedentary job.

3.  Broadhead's employability and Social Security disability

As a last argument, Broadhead asserts that the BRC was unreasonable because it failed to take into account Broadhead's employability and her disabled status under

---

[60] Pl.'s Mem. Opp'n, Exhibit A.
[61] *Grosvenor v. Qwest Commc'ns Int'l*, 191 Fed. Appx. 658, 663  (10th Cir. 2006) (unpublished opinion).

Social Security.  The LTD plan is silent as to any employability assessment and its terms differ from Social Security disability benefits.

In this ERISA case, the terms of the plan govern.  In addressing "whether a vocational or occupational assessment is required," the Tenth Circuit, joining with five other circuits, held that "whether a claims administrator must consider vocational or occupational evidence in reaching its determination to deny a claimant "any occupation" benefits depends on the circumstances of the particular case and the terms of the benefits plan.[62]

In regards to Social Security benefits, the Tenth Circuit noted that although Social Security determinations may be considered by an administrator as persuasive evidence they are not binding.  Instead, Social Security determinations "are entirely different and separate from a claim under ERISA, with different parties, different evidentiary standards, and different bodies of law governing their outcomes."[63]

Broadhead fails to cite any term of Federal Express's LTD Plan that relates to the claimed employability assessment.  Instead, Broadhead contends that the assessment is due because Broadhead, an excellent employee of Federal Express, was not offered any other employment with the company and will be at a disadvantage in competition with other applicants for jobs in the marketplace.  In contrast, Federal Express focuses on the terms of the LTD plan.  No term in the plan requires an employability assessment.  Rather, under the terms of the plan, Broadhead bears the burden to show she cannot work

---

[62] *Caldwell v. Life Ins. Co. of North Am.*, 287 F.3d 1276, 1290 (10th Cir. 2002).
[63] *Wagner-Hardin v. Farmland Indus.*, 26 Fed. Appx. 811, 817 (10th Cir. 2001) (unpublished opinion).

for twenty-five hours per week based on her "ability, education, training or experience" for which she is "qualified (or could reasonably become qualified)."  Broadhead has failed to meet this burden.

Broadhead concludes by emphasizing her eligibility under Social Security. Although "not arguing that the Social Security Administration's determination binds Federal Express," Broadhead argues that Federal Express has the burden to show why Broadhead is eligible under Social Security but not under its own disability.  The argument fails for two reasons.  First, the plan does not impose a burden on Federal Express to explain extraneous disability determinations by a government agency. Second, Federal Express's ERISA-governed plan and its terms differ from determinations used by Social Security benefits.  Broadhead presents no evidence to the contrary other than her unsupported assertion.  The terms of the Plan govern; the BRC was not required to make an employability assessment or consider Broadhead's Social Security disability benefits.

### IV.  CONCLUSION AND ORDER

The record reveals that Broadhead is unhealthy.  But despite her unfortunate condition, the posture of this case and the standard of review work against Broadhead. Even under the reduced deference of the arbitrary and capricious standard of review of the administrative record, Federal Express's denial of Broadhead's LTD benefits was reasonable.  Although the treating physicians and the peer review physicians did not completely agree on the cause of Broadhead's ailments, their opinions created substantial evidence for the BRC to rationally find that there were no significant objective findings

and that Broadhead was able to work 25 hours per week.  Therefore Federal Express's denial of Broadhead's eligibility for "Total Disability" under its ERISA-governed Plan was reasonable based on the terms.

Based upon the foregoing, it is therefore

ORDERED that Federal Express's Motion for Summary Judgment is GRANTED. It is further

ORDERED that judgment shall be entered in favor of Federal Express and against

Broadhead on all claims.

SO ORDERED.

DATED  March 26, 2007.

BY THE COURT:

_____

TED STEWART
United States District Judge